# 2006 DTA 8

**TRIBUNAL DE CIRCUITO DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL ESPECIAL**

ROSA LYDIA VÉLEZ Y OTROS
Apelantes

RECEIVED
FEB 0 3 2006
SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

v.

AWILDA APONTE ROQUE Y OTROS
Apelados

Núm. KLAN-03-01177

San Juan, Puerto Rico, a 21 de octubre de 2005

Panel especial integrado por su Presidente, el Juez Cordero,
y los Jueces Negroni Cintrón y Rodríguez Muñiz

Cordero, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Los demandantes-apelantes presentaron ante nuestra consideración un recurso de Apelación ■ en el que nos solicitaron la revisión de la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, ("*TPI*") el 27 de mayo de 2003, notificada el 10 de junio de 2003. Mediante la referida Sentencia, el TPI denegó una solicitud de daños y perjuicios colectivos de los demandantes-apelantes los cuales ascienden a alrededor de 70,000 niños y niñas de educación especial a quienes remitió a la presentación de pleitos individuales.

I

El presente caso es un pleito que comenzó el 14 de noviembre de 1980 con la presentación de una demanda de *injunction* y daños al amparo de la Ley del Programa de Educación Especial, 18 L.P.R.A. § 1331, *et seq.*, y la Ley de Educación para Niños/as Incapacitados, 20 U.S.C. 1401, *et seq*. Mediante la Demanda presentada, los demandantes-apelantes solicitaron, en síntesis, que se cumpliera con los referidos estatutos y la Reglamentación Federal de educación que obliga a proveer educación especial y servicios relacionados a todo niño con impedimento menor de 21 años inclusive. A su vez, solicitaron la suma de $5,000 para cada uno de los demandantes-apelantes por los daños ocasionados por sus actuaciones ilegales.

Posteriormente, el 10 de septiembre de 1981, el caso fue certificado como un pleito de clase al amparo de la Regla 20.2(b) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 20.2(b). Los componentes de dicha clase serían todos los niños con impedimentos menores de 21 años elegibles o participantes en el Programa de Educación Especial del Departamento de Instrucción Pública a quienes los demandados no le estuvieran proveyendo la educación especial y servicios relacionados garantizados al amparo de la legislación de educación especial. Asimismo, el TPI expidió un interdicto preliminar en el que ordenó lo siguiente:

*"1. Los demandados deberán implantar un programa de divulgación periódico y continuo a fin de orientar a todos los padres de niños con impedimentos mediante programas y cuñas radiales en los que se les informe sobre los derechos de la clase demandante a recibir educación especial y servicios relacionados. Se deberá orientar así mismo sobre el procedimiento a seguir para poder tener acceso a dichos servicios. Los maestros del sistema de instrucción pública deberán ser orientados sobre el particular. Los demandados deberán cumplir con esta Orden dentro de los 30 días siguientes a la fecha de emisión.*

*2. El Programa de Educación Especial preparará, cumpliendo con todas las garantías procesales, el programa de educación individualizada a todos aquellos miembros de la clase que ya hayan sido evaluados, durante los treinta (30) días siguientes a la fecha de esta Orden. Todos los niños que ya hayan sido evaluados deberán estar recibiendo la educación especial y servicios relacionados que ameriten dentro de los sesenta (60) días a partir de la fecha de esta Orden.*

*3. A todo miembro de la clase demandante que ya esté registrado, pero que todavía no haya sido*

*evaluado, se le deberá practicar las evaluaciones correspondientes durante los sesenta (60) días siguientes a la fecha de esta Orden. Los miembros de la clase que sean de esta manera evaluados deberán comenzar a recibir educación especial y servicios relacionados no más tarde de noventa (90) días contados desde la fecha de esta Orden.*

*4. Luego de la emisión de esta Orden, todo nuevo solicitante deberá comenzar a recibir los servicios de educación especial y otros servicios relacionados que necesite dentro de sesenta (60) días contados a partir de la fecha en que se registre al niño o se soliciten los servicios.*

*5. En lo sucesivo, los demandados deberán cumplir estrictamente con la disposición VI-A del Reglamento del Programa de Educación Especial que establece que el registro de niños con impedimentos deberá mantener en la oficina del superintendente de escuelas del distrito escolar correspondiente."*

A partir de la Resolución emitida por el TPI sobre la Certificación de Clase e *Injunction* Preliminar y, debido al tiempo que tomó atender los reclamos por incumplimiento de ésta, el tribunal de instancia nombró un Comisionado Especial para que le asistiera en la implantación de la orden. Al cesar las funciones del Comisionado Especial se nombró un Monitor en el caso a cargo de velar por el cumplimiento del procedimiento administrativo de querellas y los términos legales para que se resolvieran éstas e implantar el Remedio Provisional. ■ Finalmente, en cuanto a la solicitud de *injunction,* el TPI emitió Sentencia Parcial el 14 de febrero de 2002 en la que acogió la estipulación presentada por las partes para proveer los servicios de educación especial a los miembros de la clase demandante.

Previamente, el TPI había emitido Orden el 14 de septiembre de 1995 mediante la cual exigió a las partes someter ante dicho tribunal un memorando en el que incluyera: (1) la discusión de sus alegaciones de hechos y de derecho; (2) nombre y dirección de los testigos -de hecho y periciales- que habrá de utilizar durante el acto de juicio; (3) enumeración y descripción de la evidencia documental con que cuenta; (4) itinerario para el descubrimiento de prueba; (5) en la eventualidad de que las partes vayan a utilizar testigos periciales, deberán acompañar el curriculum vitae y el informe de éstos conteniendo las opiniones, bases y fundamentos para ésta, descripción de las fuentes e información utilizada por el perito; (6) descripción detallada de los daños reclamados y la prueba a ser utilizada; (7) propuesta para las estipulaciones de hecho y documentos; y (8) indicación de las defensas.

Los demandantes-apelantes presentaron su respectivo memorando el 20 de diciembre de 1995 y el 28 de junio de 1996 se incluyeron unas enmiendas. En lo que nos concierne con relación al reclamo de daños señalaron que tratándose de un pleito de clase existe la obligación de notificar públicamente a los miembros de ésta por lo que la descripción sobre las reclamaciones de daños y prueba dependerá en gran medida de la respuesta de los miembros de la clase. Asimismo, los demandantes-apelantes solicitaron enmendar la alegación sobre la cuantía de daños por entender que la misma era muy baja con relación a la gravedad de los daños sufridos.

Los demandantes-apelantes presentaron el 3 de mayo de 1999 un *"Escrito de la Parte Demandante Sobre Adjudicación de Daños Como Remedio del Recurso de Injunction"* mediante el cual, con relación a los daños, señalaron que la trascendencia de los derechos fundamentales en la causa de epígrafe exige una restauración del daño moral y material causado a los demandantes-apelantes por el Estado, a través de sus empleados y funcionarios al no ejercer la debida diligencia ni el grado de circunspección en la prestación de los servicios de educación especial y debido a la actuación negligente al incumplir con su obligación legal de proveer tales servicios. Para ello, los demandantes-apelantes indicaron al foro recurrido que el tribunal debía sopesar cómo una litigación subsiguiente y múltiple podría afectar los derechos de los demandantes a que se le reparen los daños que sufrieron como consecuencia de las actuaciones inconstitucionales, culposas y negligentes del Estado. A su vez, los demandantes-apelantes argumentaron en cuanto al impacto que tendría la litigación

fraccionada de los daños sufridos por la clase indicando que ello atentaría contra el postulado básico que inspira el sistema de justicia de garantizar un remedio rápido y eficaz a la solución de controversias. Por ende, los demandantes-apelantes solicitaron al TPI que continuaran los procedimientos relacionados a las reclamaciones presentadas en la demanda.

Por su parte, la parte demandada presentó el 8 de julio de 1999 su *"Oposición de la Parte Demandada a la Solicitud de Daños de la Parte Demandante"*. En síntesis, la parte demandada expresó que cuando se certificó el pleito como uno de clase ello respondió a la concesión del remedio de interdicto solicitado al amparo de la Regla 20.2(b)(2) de las de Procedimiento Civil. Dicha parte arguyó que la concesión de daños no es un remedio uniforme entre los demandantes-apelantes, sino es un remedio compensatorio individualizado, ajustado a las circunstancias específicas de los reclamantes en particular. Es decir, en el caso de autos los daños no son homogéneos, pues dependen de un sin número de factores, tales como la naturaleza y severidad del impedimento, el servicio de educación especial disponible en la escuela o distrito particular del reclamante al momento de la radicación de la demanda, el grado en que tales daños fueron mitigados por los reclamantes, si fueron objeto de los procedimientos administrativos concernientes y la extensión del daño, entre otros.

El 8 de noviembre de 1999, el Comisionado Especial, nuevamente asignado al caso de epígrafe, emitió un Informe sobre la controversia de daños mediante el cual recomendó que en la presente acción de clase no se consideren las reclamaciones de daños. En específico, el Comisionado expresó que las reclamaciones de daños debían presentarse, como había sido hasta el presente, mediante litigios individuales, en los cuales se debía establecer la existencia de una reclamación que justifica la concesión de un remedio. Como fundamentos para tal recomendación, el Comisionado Especial esbozó que: (1) no se puede cumplir con el requisito de tipicidad para certificar la acción en cuanto a los daños como un pleito de clase debido a la variedad y multiplicidad de los hechos que determinan el derecho y el alcance de una reclamación de daños para cada uno de los miembros de la clase; (2) para adjudicar los daños el tribunal tendría que examinar la prueba caso a caso no sólo para establecer si en el caso particular la parte demandada incumplió con su deber legal, sino también los contornos precisos del incumplimiento y los daños que ocasionó; (3) al certificar el pleito de clase bajo la Regla 20.2(b) de Procedimiento Civil se creó un remedio para la clase general por tener ésta la reclamación común de que no se cumplía con las disposiciones legales para la educación de los niños que componen la clase; (4) el caso ha sido tramitado en todo momento como uno de *Injunction* para obligar a los demandados a actuar; y (5) las cuestiones comunes a los miembros de la clase no predominan sobre las cuestiones de hechos individuales. Básicamente, el Comisionado señaló que los miembros de la clase vendrían obligados a probar sus daños individualmente requiriendo así vistas separadas. A su vez, el Comisionado analizó que tampoco procedía certificar la clase bajo la Regla 20.2(c) de Procedimiento Civil debido a que no se cumplía con el requisito de tipicidad, ya que las controversias individuales de los miembros de la clase predominan sobre las controversias comunes de la clase general.

El 20 de enero de 2000, los demandantes-apelantes presentaron réplica al informe emitido por el Comisionado. En compendio, los demandantes-apelantes expusieron que: (1) la demanda presentada contiene alegaciones específicas de daños para todos y cada uno de los miembros de la clase; (2) al considerar el impacto de la litigación fraccionada de los daños sufridos por la clase, atentaría contra el postulado de un remedio rápido y eficaz para la solución de disputas; (3) la causa de acción en daños de los miembros de la clase es una general y no particular a cada uno de ellos, ya que la misma está basada en: (a) el incumplimiento de la obligación estatutaria con las leyes federales de educación especial; (b) incumplimiento con la obligación estatutaria con las leyes de Puerto Rico; (c) ausencia de una estructura administrativa para viabilizar la prestación de servicios a los miembros de la clase, ausencia de reglamentación y violaciones basadas en la: (i) la falta de identificar a los jóvenes y niños con inhabilidades; (ii) falta de evaluación en un término razonable; (iii) evaluaciones no discutidas con los padres; (iv) los Programas Educativos Individualizados (PEI) no se preparan dentro de los términos dispuestos en la ley; (v) falta de ubicación en un término razonable; (vi) discrimen contra la clase por razón de impedimento; (vii) falta de proveer los servicios relacionados o tardanza en ofrecer los mismos.

En lo que respecta a la controversia ante este Tribunal, el TPI emitió la "*Sentencia*" objeto de revisión el 27 de mayo de 2003, notificada el 10 de junio de 2003. **[3]** En la referida Sentencia, el TPI declaró "*No Ha Lugar*" la solicitud de los demandantes-apelantes para considerar la reclamación de daños de miembros de la clase sin perjuicio de la facultad de los miembros de la clase a incoar una acción independiente de daños y perjuicios.

Para llegar a la determinación emitida en su Sentencia, el TPI señaló que a los tribunales les asiste la facultad de conceder la indemnización de daños, además de los remedios de naturaleza interdictal solicitados. Asimismo, indicó que el caso de epígrafe se convirtió en un pleito de clase al amparo de la Regla 20.2(b) de las de Procedimiento Civil la cual no está concebida para cobijar acciones en cuyos reclamos predominen las cuestiones relativas al resarcimiento de daños. El TPI expresó que el reclamo de daños requiere de ordinario un escrutinio individual y subjetivo para probar caso a caso los daños alegados, lo cual resulta ajeno al diseño de adjudicación uniforme a que responde la conveniencia del pleito de clase. El referido foro enfatizó que pretender dirimir peticiones de daños a favor de los miembros de una clase exigiría que cada uno de éstos acreditara, mediante los mecanismos correspondientes, el perjuicio específico que ha sufrido. El foro recurrido indicó que para que se pueda conceder el remedio de daños a un pleito de clase, el daño debe ser uno que dimane de forma automática de la resolución de los méritos de la controversia, es decir, que concierna a la adjudicación del remedio interdictal, sin necesidad de determinar el tipo subjetivo para cada determinación, o sea, el remedio monetario debe ser incidental a tal petición. El TPI estableció que para que éstos fueran incidentales los daños debían: (1) ser del tipo del cual los miembros de la clase son acreedores automáticos; (2) computables mediante estándares objetivos y no mediante estándares que descansen en diferencias subjetivas que informen circunstancias de cada miembro de la clase; y (3) la concesión de daños no debe requerir la celebración de vistas adicionales.

El TPI determinó que para establecer la conveniencia de permitir una solicitud de daños de una clase bajo la Regla 20.2(b) de Procedimiento Civil se debe considerar: (1) la existencia predominante de controversias comunes a la reclamación del remedio de daños, es decir, que las lesiones por las que se solicitan daños han sido ocasionadas por la conducta de los demandados, la cual se basa en políticas y prácticas aplicables a la clase en general; (2) la reclamación de daños puede introducir controversias significativas sobre responsabilidad o defensas individuales que requieran vistas separadas para cada miembro de la clase de manera que se pueda establecer la responsabilidad de los demandados; y (3) la descripción de la clase tiene que ser adecuada al definir quién es elegible para el remedio monetario.

Así las cosas, el TPI analizó el historial del caso de epígrafe determinando que el mismo se ha fundado esencialmente en la obtención de un remedio interdictal a favor de la clase; que durante años las reclamaciones en daños y perjuicios que fueron invocadas fueron separadas de la acción principal y continuadas como pleitos independientes. El TPI señaló que aunque en la demanda se solicitó la concesión de daños para los representantes de la clase no se solicitó un remedio específico de daños para todos los miembros de la clase. De igual manera, concluyó que pretender adjudicar los daños en el caso ante nos requeriría que cada uno de los estudiantes que componen el universo de la clase demostrara en qué consistió específicamente la infracción legal de la cual fueron víctimas por parte del gobierno, los contornos específicos del incumplimiento y el alcance particular de cada daño. Siendo ello así determinó que no procedía considerar las reclamaciones de daños de los miembros de la clase como parte del pleito de epígrafe y que tampoco procedería la bifurcación de los procedimientos para la atención separada de los aspectos de responsabilidad y daños al amparo de la Regla 20.2(c) de las de Procedimiento Civil.

Los demandantes-apelantes presentaron una "*Solicitud de Determinaciones de Hechos Adicionales*" el 20 de junio de 2003. Ésta fue denegada mediante Resolución emitida el 11 de julio de 2003, notificada el 1ro de agosto de 2003. Éstos presentaron el escrito de "*Apelación*" ante nuestra consideración el 30 de septiembre de 2003. Los demandantes-apelantes señalaron que erró el TPI al denegar la solicitud de daños y perjuicios colectivos al remitir a éstos a la presentación de pleitos individuales.

Los demandados presentaron el 15 de octubre de 2003 una *"Moción de Desestimación"* en la que señalaron que el recurso presentado ante nos es tardío porque la moción de determinaciones de hechos adicionales no interrumpió el término para comparecer ante nos. Los demandantes-apelantes presentaron su correspondiente oposición. Este Tribunal, mediante Resolución emitida el 30 de abril de 2004, declaró Sin Lugar la solicitud de desestimación presentada por los demandados. Éstos presentaron una *"Moción de Reconsideración"* de dicha determinación el 3 de junio de 2004, la cual fue declarada No Ha Lugar por este Tribunal el 21 de octubre de 2004. Debido a ello, los demandados presentaron un recurso de *certiorari* al Tribunal Supremo (CC-2004-1079), el 18 de noviembre de 2004. El Tribunal Supremo, mediante Resolución emitida el 4 de marzo de 2005, notificada el 29 de marzo de 2005, declaró No Ha Lugar el recurso de *certiorari* presentado por los demandados.

Ahora, con el beneficio de la comparecencia de las partes en el caso de epígrafe, este Tribunal está en posición de resolver la controversia ante nos que se circunscribe a determinar si en el pleito de epígrafe procedía la tramitación de los daños como parte de un pleito de clase. Veamos.

## II

El derecho a la educación es uno de los derechos fundamentales del hombre, el que lleva al entendimiento de otros derechos. Ciertamente, toda persona es igual ante la ley y no existe justificación alguna para que estudiantes con impedimentos sean discriminados y privados de su derecho a la educación. Sonia Enid Rivera Lebrón, *El Derecho a la Educación de los Niños y Niñas con Impedimentos*, 37 Rev. Jur. U.I.P.R. 293 (2003).

Con el fin de asegurar la igualdad de oportunidad educativa para niños y niñas con impedimento existe la Ley Federal conocida como Individual with Disabilities Education Act. (*"IDEA"*), según enmendada, 20 USC § 1400, *et seq.*, la cual establece la obligación de los estados y territorios participantes hacia los jóvenes con inhabilidades para que: (a) reciban una educación pública y apropiada que haga énfasis en proveerles la educación especial y los servicios relacionados diseñados para atender sus necesidades particulares; (b) se les prepare para trabajar y llevar una vida independiente; (c) se asegure que se protejan los derechos de los niños y niñas con impedimentos y los de sus padres o guardianes; (d) se ayude a los estados, comunidades y agencias gubernamentales a proveer una educación adecuada para dichos niños, y (e) evaluar y asegurar la efectividad de los esfuerzos para educar adecuadamente a los niños con impedimento. Mediante IDEA se aspira a educar al niño con impedimento en el ambiente menos restrictivo posible y proveer todos aquellos servicios relacionados que sean necesarios para hacer posible que se cumpla el plan educativo individualizado a cada uno de ellos.

Utilizando como modelo la citada Ley Federal, se aprobó en Puerto Rico la Ley del Programa de Educación Especial (*"LPEE"*), Ley Núm. 51 del 7 de junio de 1996, 18 L.P.R.A. sec. 1331 *et. seq*, derogada por la *"Ley de Servicios Educativos Integrales para Personas con Impedimentos"* del 7 de junio de 1996, 18 L.P.R.A. § 1351, *et seq*. Ambas legislaciones proveen para ayudar a desarrollar las destrezas educativas y fomentar el beneficio de la educación especial contemplada en el plan educativo individual donde se le brinda al estudiante aquellos servicios relacionados que se recomienden por especialistas. La educación especial que recibe cada niño elegible al programa consiste de un plan especialmente diseñado para satisfacer las necesidades individuales y particulares del niño con impedimento, incluyendo instrucciones en el salón, en el hogar, hospitales, otras instituciones y en cualquier otro lugar en el cual el niño con impedimento se desenvuelva. IDEA, 20 U.S.C. sec. 1401(a)(16), 18 L.P.R.A. § 1352.

En Puerto Rico, el término: *"persona con impedimento"* comprende a *"infantes, niños, jóvenes y adultos hasta los veintiún (21) años de edad, inclusive, a quienes se les ha diagnosticado una o varias de las siguientes condiciones: retardación mental, problemas de audición incluyendo sordera, problemas del habla o lenguaje, problemas de visión incluyendo ceguera, disturbios emocionales severos, problemas ortopédicos, autismo, sordo-ciego, daño cerebral por trauma, otras condiciones de salud, problemas específicos de aprendizaje, impedimentos múltiples; quienes por razón de su impedimento, requieran educación especial y servicios*

*relacionados. Incluye también retraso en el desarrollo para los infantes desde el nacimiento hasta los dos (2) años inclusive.*" 18 L.P.R.A. § 1351(12). Todo niño impedido menor de veintiún (21) años de edad, deberá ser inscrito en un registro de niños con las limitaciones que mantendrá el Programa de Educación Especial y será evaluado para determinar sus necesidades. Posterior a dicha evaluación, se preparará un Programa Educativo Individualizado para cada estudiante con impedimento y se le proveerán los servicios de educación especial. 18 L.P.R.A. § 1355.

### III

Por otro lado y de envergadura a la controversia presentada ante nos, es menester señalar bajo cuáles disposiciones respondería el Estado a una acción de daños y perjuicios en el caso de epígrafe.

En Puerto Rico, por lo general, la obligación de reparar un daño dimana de un hecho propio. Art. 1802 del Código Civil, 31 L.P.R.A. § 5141. Por excepción, hay responsabilidad por actos ajenos si existe un nexo jurídico previo entre el causante del daño y el que viene obligado a repararlo. Art. 1803 del Código Civil, 31 L.P.R.A. § 5142. El Estado es responsable en este concepto en las mismas circunstancias y condiciones en que sería responsable un ciudadano particular.

Mediante la Ley de Pleitos Contra el Estado, Ley de Reclamaciones y Demandas Contra el Estado ("*Ley de Pleitos Contra el Estado*"), 32 L.P.R.A. § 3077, *et seq.,* el Estado renunció parcialmente su inmunidad, ya que permitió ser demandado cuando sus agentes o empleados, por descuido, negligencia, o falta de circunspección ocasionan daños. Además, esta ley autoriza demandas fundadas en la Constitución o en cualquier ley o reglamento de Puerto Rico o en algún contrato con el Estado. Brau del Toro, Herminio, *Los Daños y Perjuicios Extracontractuales en Puerto Rico*, 2da. Ed., **Publicaciones J.T.S.**, 1986, Vol. II., pág. 794. No obstante, el consentimiento brindado mediante la Ley de Pleitos Contra el Estado está sujeto a ciertas restricciones. Irizarry Yunque, Carlos J., *Responsabilidad Civil Extracontractual*, San Juan, Facultad de Derecho de la Universidad Interamericana de Puerto Rico, 2da. Ed., 1996, pág. 441. El Art. 2 (a) de la Ley de Pleitos Contra el Estado, *supra*, § 3077, establece algunas de las restricciones al derecho de demandar al Estado. Una de ellas radica en que el Estado podrá ser demandado, siempre y cuando se trate de un caso en el cual un funcionario, agente o empleado del mismo cause daños, interviniendo culpa o negligencia.

A tenor con lo dispuesto en la Ley de Pleitos Contra el Estado, para que un demandante pueda prevalecer en un pleito de daños y perjuicios contra el Estado por los actos u omisiones de un empleado, agente o funcionario, es necesario que pruebe la concurrencia de cuatro elementos. En primer lugar tiene que probar que la persona que le causó daño era agente, funcionario, o empleado del Estado y que estaba actuando en su capacidad oficial al momento de causarle el daño. Sobre este particular hay que establecer suficiente nexo jurídico entre la actuación negligente y los intereses del Estado por razón del ejercicio de funciones expresas o implícitas. En segundo lugar, el demandante tiene que probar que ese agente, funcionario o empleado actuó dentro del marco de su función. Tercero, el demandante tiene que probar que la actuación del empleado del ELA fue negligente y no intencional. Por último, el demandante tiene que demostrar relación causal entre la conducta culposa y el daño producido. *Leyva et. al. v. Aristud et. al.*, 132 D.P.R. 489, 510 (1993).

Cumplidos los cuatro requisitos antes mencionados, el Estado está sujeto a responsabilidad en cualquiera de los siguientes supuestos: (1) cuando el empleado, agente o funcionario causa un daño por su exclusiva culpa o negligencia mientras desempeña sus funciones y actúa en su capacidad oficial; (2) cuando el empleado, agente o funcionario causa un daño mientras desempeña sus funciones y actúa en su capacidad oficial por una actuación preponderantemente negligente, aun cuando dicha conducta tenga algunos elementos intencionales; (3) cuando, a pesar de que el daño fue directamente producido por un acto enteramente intencional de los cuales no responde el Estado, hubo otros actos negligentes separados co-causantes del daño por los cuales sí debe responder el Estado; y (4) cuando el Estado a través de sus agentes es negligente por omisión al incumplir con un deber impuesto por las leyes y la Constitución. *Leyva et al. v. Aristud et al.,* 132 D.P.R. a las págs. 510-511.

Ahora bien, bajo la Ley Federal de Derechos Civiles, 42 USC § 1983, el Estado no es demandable por no ser considerado "*persona*". *McMillian v. Monroe County*, 520 U.S. 781, 138 L.Ed. 2d 1; *Hafer v. Melo,* 502 U. S. 21 (1991); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989); *Leyva et.al. v. Aristud et. al,* 132 D.P.R. 489, 516 (1993). No obstante, la sección 1983 de la Ley Federal de Derechos Civiles permite a los ciudadanos hacer valer sus derechos frente a quienes abusan de su poder cuando actúan so color de autoridad estatal y la responsabilidad de los funcionarios estará fundamentada en sus propios actos u omisiones en el desempeño de su función de supervisión. *Leyva et.al. v. Aristud et. al,* 132 D.P.R. a la pág. 501. A su vez, no debemos olvidar que los tribunales tienen amplia discreción para otorgar aquel remedio que estimen adecuado cuando el estado incumple con alguna ley. Véase 40 U.S.C. § 1415 (e)(2).

Cuando nos referimos a los remedios "*adecuados*" que puede otorgar el tribunal es menester señalar que, en la controversia ante nos, éstos han sido interpretados como aquellos dirigidos a hacer que el Estado provea al perjudicado los derechos sustantivos y procesos contemplados a través de los estatutos sobre educación especial. La concesión de daños y perjuicios no está contemplada en la IDEA porque esta ley fue creada para asegurar que todos los niños impedidos tengan disponible un programa educativo gratuito especialmente diseñado para satisfacer sus necesidades. 20 U.S.C. § 1400(c). Nuestra ley de educación especial provee un esquema similar que tampoco contempla la concesión de daños y perjuicios. *Bonilla v. Chardón,* 118 D.P.R. 599 (1997). No obstante, ello de por sí no significa ni conlleva el que una persona perjudicada por una infracción a la ley local o federal de educación especial quede desprovista de algún remedio. Un tribunal al amparo de su facultad de conceder los remedios necesarios, sí podría, por ejemplo, ordenar a las autoridades escolares reembolsar a los padres los gastos incurridos en una escuela privada, en caso de que el tribunal determinara que el Estado no ofreció al niño un programa de educación adecuado. Véase *Burlington School Comm. v. Mass. Dept. of Ed.,* 471 U.S. 359 (1985). De igual forma, el Tribunal Supremo de Puerto Rico en *Bonilla v. Chardón, supra,* determinó que a base de lo resuelto en *Smith v. Robinson*, 468 U.S. 992, 1014 n. 17 (1984), la parte perjudicada por una violación a IDEA, o al estatuto similar bajo la ley local, puede ampararse en la Ley Federal de Derechos Civiles para vindicar violaciones al debido proceso de ley cuando funcionarios del Estado han privado injustificadamente a un niño de los servicios educativos especializados requeridos por la ley federal. [4] Al así resolver, el Tribunal Supremo de Puerto Rico resolvió que tal conducta configura una crasa y deliberada violación del derecho a un debido proceso de ley. *Bonilla v. Chardón, supra,* a las págs. 613-615.

Posterior a la decisión en *Smith v. Robinson, supra,* el Congreso enmendó IDEA mediante la Ley Pública 99-372 para disponer que:

"*Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes proctecting the rights of children and youth with disabilities...*". 20 U.S.C. § 1415(f).

Los tribunales apelativos federales no han sido cónsonos con la interpretación de la referida enmienda. El Tribunal Federal de Apelaciones para el Tercer Circuito, por ejemplo, ha interpretado que la referida enmienda se aprobó con la intención expresa de revocar legislativamente a *Smith v. Robinson, supra,* a los efectos de que la IDEA era el remedio exclusivo para reclamar el derecho a una educación continuada. *Susan v. Wilson*, 70 F. 3d 751, 763 (3rd. Cir 1995). En contraste con lo resuelto por el Tribunal Federal de Apelaciones para el Cuarto Circuito que ha determinado que de permitirse la demanda a funcionarios estatales a través de la Ley Federal de Derechos Civiles lo habría consignado expresamente:

"*Concededly, section 1415(f) overrules much of Smith's holding. The amendment specifically rejects the Smith Court's interpretation of EHA as precluding claims under the Constitution or the Rehabilitation Act that are virtually identical to EHA claims. But while section 1415(f) explicitly preserves remedies under the Constitution, the Rehabilitation Act, and specified "other" statutes, it simply fails to mention section 1983. The*

*reference to "other" statutes protecting the rights of disabled children cannot naturally be read to include 42 U. S.C. sec. 1983, statute which speaks generally and mentions neither disability nor youth. By preserving rights and remedies "under the Constitution" section 1415(f) does not permit plaintiffs to resort to section 1983 for constitutional violations, notwithstanding the similarity of such claims to those stated directly under IDEA. But section 1415(f) does not permit plaintiffs to sue under section 1983 for an IDEA violation, which is statutory in nature.... Nothing in section 1415(f) overrules the Court's decision in Smith to the extent it held that Congress intended IDEA to provide the sole remedies for violations of that same statute. If Congress meant to overrule Smith on this significant point, it certainly chose an oblique and essentially implausible means of doing so." Sellers v. The School Board of the City of Manassas*, 141 F.3d 524, 530 (4th Cir. 1998).

Al examinar ambas posiciones, somos de la opinión que la posición del Tribunal Federal de Apelaciones para el Cuarto Circuito, aunque persuasiva, no debe ser avalada por este Tribunal. La misma exige un formalismo excesivo al Congreso e ignora el ambiente que rodeó la aprobación de la enmienda. Al interpretar la referida sección de IDEA, concluimos que el Congreso intentó, con éxito, dejar sin efecto la prohibición a demandar por violaciones sustantivas a la IDEA, dispuesta en *Smith v. Robinson, supra*, por el Tribunal Supremo Federal. A partir de la enmienda, el Congreso dispuso que IDEA ya no sería el remedio exclusivo para reclamar el derecho a una educación adecuada. Coincidimos, pues, con el Tribunal Federal de Apelaciones para el Tercer Circuito en que la enmienda a la IDEA dispone que no se limitan los remedios disponibles bajo otras leyes federales que protejan a las personas con impedimentos y no descartó el uso de otras leyes como la Sección 1983, título 42, de la Ley de Derechos Civiles Federales que protege a toda persona de violaciones al debido procedimiento de ley. Eso es precisamente lo resuelto por el Tribunal Supremo de Puerto Rico en *Bonilla v. Chardón, supra*, decisión que por su valor como precedente resuelve el punto en esta jurisdicción.

A base de lo antes expuesto, resulta incuestionable que los tribunales tienen poder para conceder un remedio en daños y perjuicios contra el Estado por violaciones a IDEA y la ley local de educación especial. Claro está, para la concesión de daños aplicará la norma general de que los mismos deben ser probados y la cuantía de éstos será objeto de prueba. *Rivera Rivera v. Insular Wire Products, Corp.,* 140 D.P.R. 912, 932-933; *Continental Ins. Co. v. Isleta Marina,* 106 D.P.R. 809, 815 (1978).

## IV

Próximo, corresponde a este Tribunal determinar si en el caso de epígrafe procede la tramitación de la causa de acción de daños y perjuicios como un pleito de clase.

El pleito de clase está regido en Puerto Rico por la Regla 20 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 20, equivalente a la Regla 23 de las Reglas Federales de Procedimiento Civil. En específico, la Regla 20 de Procedimiento Civil establece los cuatro requisitos para que se pueda incoar un pleito de clase:

*"Uno o más miembros de una clase podrán demandar o ser demandados como representantes de todos los miembros de la clase solamente si: (1) la clase fuere tan numerosa que la acumulación de todos los miembros resultare impracticable; (2) existieren cuestiones de hecho o de derecho común a la clase; (3) las reclamaciones o defensas de los representantes fueren típicas de las reclamaciones o defensas de la clase; y (4) los representantes protegerían los intereses de la clase de manera justa y adecuada."* Regla 20.1 de las de Procedimiento Civil, *supra.*

El Tribunal Supremo al interpretar la Regla 20 de Procedimiento Civil, *supra,* en *Cuadrado Carrión v. Romero Barceló*, 120 D.P.R. 434 (1988), examinó brevemente los principios generales de la norma para la certificación de un pleito de clase, es decir, la numerosidad, comunidad, tipicidad y adecuada representación.

Con relación al requisito de *numerosidad,* se debe establecer que se requiere que las partes en el pleito sean tan numerosas que resulte impracticable la acumulación de éstas. *Guckenberger v. Boston University,* 957 F.Supp.

306, 325 (1997). No obstante, el factor numérico, de por sí sólo no es suficiente para conceder la clasificación del pleito como uno de clase. Tan es así que el Tribunal Supremo Federal en el caso de *Anchem Products, Inc. v. Windsor*, 521 U.S. 291 (1997), denegó la certificación como pleito de clase de las causas de acción presentadas por los perjudicados por el asbesto quienes fueron estimados en cerca de 200,000 antes del año 2000 y 265,000 al año 2015. Dentro del requisito de *numerosidad* existen otros factores a considerar que no se refieren a la cantidad de litigantes tales como lo son la dispersión geográfica, la posibilidad de que los miembros de la clase puedan ser identificados, la cuantía de la reclamación y la habilidad de cada miembro para hacer valer sus derechos de forma individual. *Cuadrado Carrión v. Romero Barceló,* 120 D.P.R. a la pág. 450.

El elemento de *comunidad* se refiere a que las cuestiones de hechos o derecho deben ser comunes a la clase, se ha establecido que no es necesario que se de una completa identidad de los asuntos, sino que las cuestiones comunes a los miembros de la clase predominen sobre cualquiera cuestiones que afecten a los miembros individuales. *Cuadrado Carrión v. Romero Barceló*, 120 D.P.R. a las págs. 451-452.

Por su parte, el requisito de *tipicidad* se utiliza para atender la cuestión de si existe relación entre las reclamaciones de los demandantes y las de la clase que se intenta representar, es decir si cuando el representante defiende sus intereses adelanta los intereses de toda la clase. No obstante, ello no significa que la clase tiene que estar necesariamente compuesta por personas con idénticas reclamaciones, pero si se requiere la adjudicación por separado de la reclamación o defensa de cada miembro de la clase, las situaciones individuales pueden tornar atípicas las reclamaciones de la clase general. *Cuadrado Carrión v. Romero Barceló*, 120 D.P.R. a las págs. 453-454. El elemento de *tipicidad* se satisface cuando la causa de acción y los daños surgen de los mismos eventos o curso de conducta que forman la base de la reclamación de la clase general basados en la misma teoría legal. *In re: Bank of Boston*, 762 F.Supp. 1525, 1532 (D.Mass. 1991)

Por medio de los elementos de *comunidad* y la *tipicidad,* se busca que la acción pueda ser eficientemente sostenida y que los intereses de los ausentes sean adecuadamente representados. *Baby Neal v. Casey,* 43 F3d 48, 56 (1994), *General Tel. Co. of Southwest v. Falcón,* 457 U.S. 147, 157 n. 13 (1982). Estos requisitos no exigen que los miembros de la clase compartan reclamaciones idénticas, más bien que las mismas sean comunes y no conflictivas a la clase general. *Hassine v. Jeffes*, 846 F2d 169, 176-77 (3rd. Cir. 1988); *Guckenberger v. Boston University*, 957 F. Supp. at. 325. Es importante recordar que cuando la solución a un problema legal depende de determinaciones individuales para cada uno de los miembros de la clase, se ha concluido reiteradamente que no hay comunidad ni tipicidad y se rehúsa certificar el pleito como uno de clase. Véase: *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.,* 149 F.R.D. 65, 76 (1993), y casos allí citados.

Por último, para que se pueda tramitar como un pleito de clase se requiere de una *adecuada representación,* es decir que el demandante que pretende representar a una clase tiene que representar adecuadamente los intereses de los miembros ausentes de la clase.

Además de los requisitos antes expuestos para que un pleito pueda sostenerse como un pleito de clase, es necesario que se satisfaga al menos uno de los siguientes, en lo pertinente, que:

*"(b) la parte que se opone a la clase ha actuado o ha rehusado actuar por razones aplicables a la clase en general, en forma tal que resulte apropiado conceder finalmente un remedio mediante interdicto, o sentencia declaratoria correspondiente con respecto a la clase en general; o*

*(c) el tribunal determina que las cuestiones de hechos o de derecho comunes a los miembros de la clase predominan sobre cualesquiera cuestiones que afecten solamente a miembros individuales, y que el pleito de clase es superior a otros métodos disponibles para la justa y eficiente adjudicación de la controversia. Los asuntos pertinentes para las determinaciones incluyen:*

*(1) El interés de los miembros de la clase en controlar individualmente la tramitación o defensa de pleitos separados;*

*(2) la naturaleza y el alcance de cualquier litigio relativo a la controversia ya comenzado por o en contra de miembros de la clase,*

*(3) la deseabilidad de concentrar o no el trámite de las reclamaciones en el foro específico;*

*(4) las dificultades que probablemente surgirían en la tramitación de un pleito de clase."* Regla 20.2 de las de Procedimiento Civil, *supra,* equivalente a la Regla 23(b)(2) y (3) de las de Procedimiento Civil Federal. (Énfasis Suplido)

El pleito de clase adelanta los siguientes objetivos: (1) fomenta la economía judicial en la medida que disminuye un número de casos que deben resolver los tribunales al permitirles adjudicar de una vez todas las cuestiones comunes a varios litigios; (2) evita la posibilidad de reclamaciones múltiples y repetitivas; (3) permite hacer justicia a personas que de otra manera no la obtendrían, especialmente cuando las sumas individuales en controversia no son cuantiosas y, por lo tanto, las personas agraviadas no se sienten motivadas a litigar; y (4) protege a las partes de sentencias inconsistentes. *Cuadrado Carrión v. Romero Barceló,* 120 D.P.R. a la pág. 446. A su vez, el Tribunal Supremo ha expresado que la acción de clase, al permitir que una parte represente a otra que está ausente, pone en peligro el derecho a ser oído que tiene toda persona en el procedimiento donde se verán adjudicados sus derechos; esto sin la debida programación y control, el pleito de clase puede generar costos administrativos muy elevados y demora en movimiento de casos. *Id.*

Al analizar la Regla 20.2(b) de las de Procedimiento Civil equivalente a la Regla 23(b)(2) de las de Procedimiento Civil Federal, surge que bajo este inciso predomina la normativa de que se ha rehusado y evitado las certificaciones de clase para la reclamación de daños compensatorios o cuando el pleito de clase no es necesario para obtener un remedio. Véase: 7A Charles A. Wright, *et al., Federal Practice and Procedure* §1763 at 201; *Baby Neal v. Casey,* 43 F3d at 57, 64; **[5]** *Dionne v. Bouley,* 757 F.2d 1244, 1355 (1ˢᵗ Cir. 1985); *Santiago v. City of Philadelphia,* 72 F.R.D. 619, 626-28 (E.D.Pa. 1976). A base de este inciso se conceden certificaciones de pleito de clase cuando el remedio que se requiere es un interdicto o sentencia declaratoria contra una parte que alegadamente ha actuado, o rehusado actuar, a tenor con las obligaciones impuestas por algún estatuto o regla aplicable a la clase de forma general. *Anchem Products, Inc. v. Windsor,* 521 U.S. at 614 citando al Adv. Comm. Notes, 28 U.S.C.App., p. 697. **[6]** Por regla general, las certificaciones a base de este inciso se confieren a pleitos en el que los miembros de la clase tienen controversias similares respecto a los hechos y el derecho y el remedio solicitado aplica a la clase en general de la misma naturaleza.

Por otro lado, la Regla 20.2(c) de Procedimiento Civil equivalente a la Regla 23(b)(3) de Procedimiento Civil Federal permite la certificación de un pleito de clase cuando las controversias comunes a la clase predominan las controversias que afectan particularmente al individuo y la solución al problema presentado por la clase es superior a cualquier otro método para la justa y eficiente adjudicación de la polémica. Los factores a considerar son: (1) el interés de los miembros de la clase en controlar individualmente sus casos; (2) el alcance y la naturaleza de cualquier litigación concerniente a la controversia que haya sido comenzada; (3) la deseabilidad de concertar la litigación en un foro en particular; y (4) las dificultades en el manejo de la acción de clase. *Anchem Products, Inc. v. Windsor,* 521 U.S. at 616. Específicamente este inciso fue creado con el propósito de vindicar los derechos de grupos de personas que individualmente carecerían de fuerza para traer el caso a corte:

*"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential into something worth someone's (usually an attorney's) labor." Mace v. Van Ru Credit, Corp,* 109 F3d 338, 344 (1997)

## V

En el caso ante nuestra consideración, los demandantes-apelantes solicitaron la concesión de daños en el pleito de clase llevado ante el TPI. La parte demandada se opuso a que se concedieran los daños mediante el mecanismo de un pleito de clase. El TPI declaró que no procedía la certificación de la clase para la concesión de daños. A la luz del derecho antes expuesto y de las siguientes consideraciones, este Tribunal confirma la Sentencia Parcial emitida por el TPI.

Ciertamente, el presente pleito fue certificado como un pleito de clase al amparo de la Regla 20.2(b) de Procedimiento Civil. Bajo este inciso se concedió el pleito de clase para conceder a los miembros de ésta un remedio mediante interdicto o sentencia declaratoria. Sin embargo, y según discutido, al amparo de este inciso, la doctrina establece que no procede la certificación cuando el remedio a la clase resulta en la compensación monetaria de daños. Adv. Comm. Notes, 28 U.S.C. App. P. 697; *Wright, supra, Baby Neal v. Casey*, 43 F3d at 57, 64; *Dionne v. Bouley*, 757 F2d at 1355, *Santiago v. City of Philadelphia*, 72 F.R.D. at 626-28.

No obstante, lo antes establecido, debemos examinar si procede la certificación de la clase para la concesión de daños. Para que un pleito sea certificado como uno de clase debe cumplir con los requisitos de la Regla 20 de Procedimiento Civil, o sea, numerosidad, comunidad, tipicidad y adecuada representación. Asumiendo que en la clase ante nos existe el requisito de numerosidad debemos analizar si en el caso particular de los niños y niñas con derecho a educación especial existen cuestiones comunes a la clase general que no requieren determinaciones individuales para cada reclamación de daños y si éstas son típicas de la clase en general. Entendemos que sí requieren determinaciones individuales. Ello es así porque los estatutos que cobijan el derecho a educación especial están dirigidos y diseñados a atender las necesidades particulares e individualizadas de estos niños de manera tal que éstos puedan trabajar y llevar una vida independiente. Es decir, el derecho a educación especial debe ser ajustado individualmente a las necesidades específicas de cada niño en particular por lo que las reclamaciones de éstos y sus respectivos daños varían dependiendo de las necesidades del individuo. Asimismo, la reclamada concesión de daños podría variar de acuerdo con los procedimientos, si alguno, que los demandados hayan llevado a cabo, la mitigación de daños y los remedios provisionales que hayan sido provistos.

De igual manera, tampoco se cumple con el requisito de tipicidad, pues en la concesión de daños se requeriría la adjudicación separada de la reclamación de cada uno de los demandantes en forma individual. En el caso exclusivo de la concesión de daños, el requisito de tipicidad posee el mismo inconveniente que el elemento de comunidad, ya que ello dependerá de la situación particularizada de cada uno de los miembros de la clase, como ejemplo, si se denegó el servicio de educación especial, si tenía derecho a éste, la naturaleza del servicio solicitado, el período por el cual habría derecho, el tipo y la cantidad de los servicios de educación especial necesarios y las necesidades especiales del niño, entre otros.

En atención a la controversia particular ante nuestra atención, y en apoyo a nuestra decisión, nos referimos al caso de *Retting v. Kent City School District*, 94 F.R.D. 12 (1980), en el cual un grupo de demandantes presentaron una acción al amparo de IDEA para que los demandados les proveyeran acceso apropiado a la educación pública. En el referido caso, el tribunal declinó certificar el pleito de clase al concluir que no existían controversias de hecho o de derecho comunes a la clase debido a que el programa bajo IDEA requiere que:

*"[t]he type of learning experience required and the educative potential of each child must be personalized and is subject to constant revision according to changes in the child's progress. There is, therefore, no common element of fact, other than that each of the potential class members is a handicapped child, a matter not in issue. Nor is there a common question of law, inasmuch as the basis for a determination that a child requires a 12 month program is totally dependent upon his or her particular handicapping condition, so that a separate adjudication of each child's claim under the statute would be required.*

...

*The Education of the Handicapped Act is intended to encourage individualized treatment of school children such as the plaintiff. For the same reason, any action or inaction by the defendants toward the plaintiffs cannot be said to be based upon grounds having general application to the class...".* (Énfasis suplido) *Retting v. Kent City School District*, 94 F.R.D. at. 14

En vista de lo anterior, concluimos que en el caso de autos se podría estar cometiendo un error y una injusticia a algunos miembros de la clase. Es claro que las condiciones entre los niños y niñas que componen la clase son diferentes. Los grados de incapacidad entre ellos y las necesidades de éstos podrían ser consideradas de forma individual para establecer cuáles daños éstos sufrieron. Bajo estas circunstancias no podemos pensar ni sostener que los daños sufridos por la clase son generales a ésta. Siendo ello así, no erró el TPI al denegar la certificación de la clase para la concesión de daños, o sea, el TPI no erró al rechazar el argumento de los demandantes en cuanto a que se haga un pago de $5,000.00 para cada miembro de la clase en concepto de una justa compensación por los daños sufridos por éstos. Ahora bien, sería sumamente injusto y honeroso, dado los hechos del presente caso y su largo historial, obligar a los demandantes a presentar nuevas demandas individuales, lo que conllevará emplazar nuevamente a cada uno de los demandados. Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 1. Por tanto, modificamos esa parte de la sentencia para que el TPI dentro de este mismo pleito adjudique las reclamaciones de daños y perjuicios que alegadamente sufrieron cada uno de los miembros de la clase, aunque queda a la discreción del TPI sub-dividir en grupos, de ser posible, a los demandantes cuyos perjuicios educativos y subsiguientes daños sufridos sean similares. De no ser posible, tendrá que ventilar cada caso individualmente.

Por los fundamentos antes esbozados, se expide el recurso ante nos, se modifica la sentencia según arriba expuesto y, así modificada, se confirma la misma.

Lo acuerda y manda este Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones